**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**WHITE PLAINS**

| | |
|---|---|
| Oscar Ithier, individually and on behalf of all others similarly situated, | 7:21-cv-09405 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| 7-Eleven, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      7-Eleven, Inc. ("defendant") manufactures, labels, markets, and sells Wasabi Delight Flavored Snack Mix under its 7-Select private label brand ("Product").

## I.    WASABI

2.      Wasabi (Japanese: ワサビ, わさび, or 山葵) is a spice traditionally prepared from a plant from the cabbage family.



3.      Wasabi has been a part of Japanese culture since at least the 10th century.

4.      Ancient manuscripts tell of its use not only for food, but for medicinal uses, religious

rituals, and a form of currency used to pay taxes.

5.     Wasabi plants grow naturally along stream beds in mountain river valleys in Japan, and require shade, rocky soil, and temperatures between 46 to 68 degrees Fahrenheit year-round.



6.     These geographic factors, along with practical growing knowledge passed through generations, means that almost all Wasabi comes from Japan.

7.     Wasabi is labor and time intensive, requiring families to work together on their farms, but the result of a successful harvest brings great pride.



8.      The root is smashed up into paste and used as a condiment. the pale green rhizome is grated or made into a paste



9.      Wasabi was first used as a seasoning for sushi in the 19th century, because its biological properties reduced the deterioration of fish and preserved its freshness.

## II.   WASABI SNACKS

10.     The popular Japanese snack, wasabi-mame (わさび豆, "wasabi bean"), consists of roasted or fried legumes (peanuts, soybeans, or peas), coated with wasabi powder mixed with sugar, salt, or oil, and possibly the addition of dried fruit, which is eaten as a crunchy snack.



3

11.    These wasabi snacks are made with actual wasabi.

12.    Seeking to capitalize on the demand for wasabi snacks, many companies, including Defendant, sell wasabi snacks, such as the "7-Select Wasabi Delight Flavored Snack Mix – Peanuts, Cranberries, Cashews, Crunchy Wasabi Peanuts, Green Peas & Almonds," promoted with a pair of chopsticks holding a wasabi pea and green stripes on the packaging.



13.    The back of the label states:

>  We've taken a typical snack mix and elevated it to a
>  whole new level of enlightenment.
>  Our 7-Select Wasabi Delight Flavored Snack Mix is
>  the kick you've been looking for!
>  Loaded  with  cranberries,  nuts  and  even  crunchy
>  wasabi    peanuts,    this    snack    mix    is
>  snacking…elevated.



14.    Beneath this are pictures of "Crunchy Wasabi Peanuts" and "Wasabi Green Peas."

15.   The statements and images, along with the green wasabi peas and peanuts seen through the cellophane window panel, tells consumers they can expect at least some wasabi.

16.   However, the Product contains no wasabi, as shown by the ingredient list.



**INGREDIENTS:**   PEANUTS,   DRIED   CRANBERRIES (CRANBERRIES,   SUGAR,   SUNFLOWER   OIL),   CASHEWS, <mark>CRUNCHY WASABI PEANUTS</mark> (WHEAT FLOUR, PEANUTS, CANE SUGAR, TAPIOCA STARCH, RICE FLOUR, PALM OIL,  LEAVENING [AMMONIUM   BICARBONATE,   BAKING   SODA],   <mark>WASABI SEASONING</mark> [POTATO   STARCH,   <mark>WASABI   POWDER</mark> {MALTODEXTRIN,   MUSTARD   SEED}],   COLORS   [BLUE #1, YELLOW #5]), <mark>WASABI GREEN PEAS</mark> (PEAS, CORN STARCH, <mark>ARTIFICIAL WASABI FLAVOR</mark>, SUGAR, PALM OIL, SEA SALT, COLORS [YELLOW #5, BLUE #1]), ALMONDS, VEGETABLE OIL (CONTAINS ONE OR MORE OF THE FOLLOWING: CANOLA OIL, PEANUT OIL, AND/OR SUNFLOWER OIL), SEA SALT.

17.   The ingredients list two "wasabi" ingredients – crunchy wasabi peanuts and wasabi green peas.

18.     The crunchy wasabi peanuts contains wasabi seasoning, which consists of:

> POTATO STARCH, ==WASABI POWDER== {MALTODEXTRIN, MUSTARD SEED}, COLORS [BLUE #1, YELLOW #5]

19.     The wasabi powder consists of maltodextrin and mustard seed, not wasabi.

20.     The wasabi green peas contain:

> PEAS, CORN STARCH, ==ARTIFICIAL WASABI FLAVOR==, SUGAR, PALM OIL, SEA SALT, COLORS [YELLOW #5, BLUE #1]

21.     However, the wasabi green peas get their wasabi taste from artificial wasabi flavor, not wasabi.

22.     According to the American Chemical Society, much of what is sold outside of Japan as "wasabi" is a mix of horseradish, mustard seeds, and artificial dyes.

23.     The added artificial yellow and blue colors are blended together to produce the bright green colored peas and peanuts.

24.     Wasabi is valued for its nutritive and antioxidant properties and its distinctive taste.

25.     Real wasabi tastes bright and pungent with a touch of quickly fading heat.

26.     Fake "wasabi" burns much hotter and longer because it is made from horseradish and mustard.

## III.   CONSUMERS EXPECT SOME WASABI AND DO NOT EXPECT ARTIFICIAL WASABI

27.     Federal and state regulations require a food labeled as "wasabi" to disclose the source of its characterizing wasabi flavor, i.e., from real wasabi ingredients, extracted from wasabi and condensed into a concentrated liquid form, from natural sources other than wasabi, i.e., horseradish, or artificial sources, such as petroleum products. 21 C.F.R. § 101.22(i).

28.     "The rule [21 C.F.R. § 101.22(i)] is premised on the simple notion that consumers

7

value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two. This consumer protection objective is relevant to taste claims conveyed in advertising as well."

29.    Natural flavor is defined as flavoring compounds from natural sources, such as "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products… whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

30.    Artificial flavor is any defined as "any substance, the function of which is to impart flavor," that is not obtained from natural source materials, including "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material." 21 C.F.R § 101.22(a)(1).

31.    At least seven out of ten consumers avoid artificial flavors because these synthetic ingredients are associated with detrimental health and environmental effects.[1]

32.    The Product's labeling – "Wasabi Delight Flavored Snack Mix," described as containing "Crunchy Wasabi Peanuts, [and] Green Peas," a pair of chopsticks holding a wasabi pea, green stripes on the packaging, and pictures of "Crunchy Wasabi Peanuts" and "Wasabi Green Peas," tells consumers the Product will contain *some* wasabi.

33.    By identifying the Product as having a "Wasabi [Delight] Flavor[ed]," consumers will expect *some* of the flavor is from wasabi.

34.    Consumers are accustomed to the front label of products disclosing the flavor source, i.e., "natural strawberry flavored," "artificially flavored," etc., such that the absence of the words,

---

[1] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

"artificially flavored wasabi," tells purchasers the Product does not have artificial wasabi flavor.

35.    Consumers are on the lookout for this statement, because if a food contains "any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label" is required to "be accompanied by the common or usual name(s) of the characterizing flavor," and the words, "artificially flavored." 21 C.F.R. § 101.22(i)(2).

36.    The coloring of the peas and peanuts further the false impression the Product contains some wasabi.[2]

37.    Artificial food dyes are an easy way for manufacturers to make foods brighter and more appealing when they see it on the shelf in a store.

38.    According to one website, "Artificial dyes are also used to help hide the fact that many processed foods don't contain much (or any) of the nutrients or foods they claim to have."

39.    Without the added artificial coloring, consumers would be suspect of a product labeled as being flavored by wasabi, because the peanuts and peas would not be bright green.

40.    This could cause consumers to inspect the ingredient list to determine the truth.

## IV.    CONCLUSION

41.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

42.    By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase a product that contained some wasabi and did not contain artificial wasabi flavor.

---

[2] The Product also fails to include the presence of artificial coloring on the front label in violation of regulations.

43.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

44.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

45.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

46.    The Product is sold for a price premium compared to other similar products, no less than approximately $2.59 for 4.5 oz (128g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

47.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

48.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

49.    There are over 9,500 7-Eleven stores in the United States, with roughly 750 in New York.

50.    Plaintiff Oscar Ithier is a citizen of New York.

51.    Defendant 7-Eleven, Inc., is a Texas corporation with a principal place of business in Irving, Dallas County, Texas.

52.    Plaintiff and defendant are citizens of different states.

53.    Defendant transacts business within this District through the operation of its stores within this District, which it supplies, staffs, operates, and manages, and its online sales made directly to residents of this District.

54.    Venue is in this District because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

55.    Venue is in the White Plains Courthouse in this District because a substantial part of the events or omissions giving rise to the claim occurred in Westchester County, i.e., Plaintiff's purchase of the Product and his awareness of the issues described here.

Parties

56.    Plaintiff Oscar Ithier is a citizen of West Harrison, Westchester County, New York.

57.    Plaintiff values her money and seeks good values.

58.    Defendant 7-Eleven, Inc., is a Texas corporation with a principal place of business in Irving, Texas, Dallas County.

59.    7-Eleven is a multinational chain of convenience stores founded in 1927 as an icehouse storefront in Dallas.

60.    Today, 7-Eleven is owned and controlled by a Japanese company.

61.    This Japanese connection makes those consumers, who may be aware of this fact, even more likely to expect the Product has some wasabi instead of only having artificial wasabi flavor.

62.    While 7-Eleven stores sell leading national brands, they sell a large number of products under one of their private label brands, 7-Select.

63.    Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

64.    Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

65.    Products under the 7-Select brand have an industry-wide reputation for quality and

value.

66.    In releasing products under the 7-Select brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

67.    Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

68.    That 7-Select branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

69.    Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

70.    A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

71.    Private label products under the 7-Select brand benefit by their association with consumers' appreciation for the 7-Eleven brand as a whole.

72.    The development of private label items is a growth area for 7-Eleven, as they select only top suppliers to develop and produce 7-Select products.

73.    These facts show a company with a significant amount of goodwill and equity when it comes to consumer purchasing.

74.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, from  Defendant's stores, including the location at 1949 Commerce St Yorktown Heights NY 10598-4409, between August and October 2021, among other times.

75.    Plaintiff bought the Product because he expected it contained some wasabi and did

not contain artificial wasabi flavor because that is what the representations said and implied.

76. Plaintiff relied on the words and images on the Product, identified here.

77. Plaintiff bought the Product at or exceeding the above-referenced price.

78. Plaintiff would not have purchased the Product if he knew the representations were false and misleading or would have paid less for them.

79. Plaintiff chose between Defendant's Product and similar products represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

80. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

81. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with their composition.

82. Plaintiff is unable to rely on the labeling of not only this Product, but other items purporting to contain wasabi, because he is unsure of whether their representations are truthful.

83. Plaintiff wants to purchase foods which contain wasabi because he likes it for its distinctive taste and nutritive properties.

<u>Class Allegations</u>

84. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Rhode Island, Michigan, Virginia, North Carolina, Kansas, Wyoming, and Delaware, who purchased the Product during the statutes of limitations for each cause of action alleged

85.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

86.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

87.    Plaintiff is an adequate representative because his interests do not conflict with other members.

88.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

89.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

90.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

91.    Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

92.    Plaintiff incorporates by reference all preceding paragraphs.

93.    Plaintiff and class members desired to purchase a product that contained some wasabi and did not contain artificial wasabi flavor.

94.    Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

95.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

96.    Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

97.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

98.   Plaintiff relied on the representations that the Product contained some wasabi and did not contain artificial wasabi flavor

99.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

100.  The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

101.  Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

102.  As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

103.  In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

104.  The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained some wasabi and did not

contain artificial wasabi flavor.

105.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

106.  This duty is based on Defendant's outsized role in the market for this type of Product, a trusted retailer, known for its convenience and quality, which means consumers expect it to be different than other retailers without such a reputation.

107.  Additionally, 7-Eleven is operated by a Japanese company, which imposes a stricter duty of care when marketing foods which originate in Japan, because it would be considered without honor to sell artificial wasabi as wasabi to other countries' citizens.

108.  Thus, the Product has a high level of trust with consumers, more so than other types of 7-Select products, like 7-Select iced tea.

109.  Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

110.  Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

111.  The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised.

112.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

113.  Defendant had a duty to truthfully represent the Product, which it breached.

16

114. This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, as the leading convenience store in the world, with a history of quality products in convenient, "grab-and-go" packaging.

115. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, the preeminent convenience store.

116. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

117. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

118. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained some wasabi and did not contain artificial wasabi flavor.

119. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of the representations.

120. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

121. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   November 14, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com